IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO:

| | |
|---|---|
| MEGAN AKSTIN ) | |
| ) | |
| Plaintiff, ) | |
| ) | **COMPLAINT** |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| ) | |
| CITY OF CHARLOTTE (CHARLOTTE ) | |
| FIRE DEPARTMENT) ) | |
| Defendants. ) | |

NOW COMES Plaintiff, by and through the undersigned counsel, and complaining of the Defendant, alleges and says:

## I. INTRODUCTION, PARTIES & JURISDICTION

1. This is an action seeking damages against Defendant for violation of Plaintiff's rights protected by Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et. seq.*,as amended and as amended by the Civil Rights Act of 1991,Americans with Disabilities Act 42 U.S.C. § 12101e, et seq., 42 U.S.C. § 1983, and the Constitution of the State of North Carolina.

2. Plaintiff, Megan Akstin, is a female citizen and resident of Gaston County, and at all times alleged, was an "employee" within the meaning of 42 U.S.C. § 2000e(f),who had to relocate in the summer of 2021 due to a lack of income and being out of work resulting in adverse financial circumstances caused by Defendant's actions.

3. The City of Charlotte is a municipal corporation which operates and maintains the Charlotte Fire Department (CFD) pursuant to the City Charter. The Chief of the Department is appointed by the City Council and is accountable to the Council for the faithful performance of his duties. He is responsible for the discipline and efficiency of the Department and for carrying out all orders, rules and regulations approved by the Council. He is also responsible for approving all promotions of members in the Department subject to the approval of the Civil Service Board.

4. Defendant, CFD and all employees thereof, were at all times herein, working within the course and scope of their employment and in furtherance of the employer's business. Further, pursuant to the doctrine of respondeat superior, the Defendant is vicariously liable for acts herein alleged against those co-workers and supervisors. Alternatively, all of the acts of the aforementioned employees may not have been within the scope of their

1

employment. Plaintiff alleges that the employer remains liable for its negligent retention of those employees.

5. At all times alleged herein, Defendant was and continues to be engaged in an industry affecting commerce and is an "employer" within the meaning of Title VII, as it regularly employs over 500 employees.

6. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as there are issues of Federal Law.

7. This Court has subject matter and personal jurisdiction over the parties in this Complaint.

8. Venue is proper pursuant to 28 U.S.C. § 1391.

9. The Court has jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

## II. FACTS

10. The foregoing paragraphs are re-alleged and incorporated by reference herein

11. Plaintiff has been employed with CFD as a Firefighter since September 20, 2010.

12. Plaintiff performed at a satisfactory level or above in her role as a Firefighter II.

13. On or around September 26, 2016, Plaintiff was involved in an automobile accident on her way to work.

14. Prior to the car accident, Plaintiff lodged multiple complaints against Captain Travis Richardson, Engineer Jeremy Tucker and others for bullying and harassment in the workplace. These complaints were made to Captain Travis Richardson, Battalion Chief Jerry Winkles and escalated to Division Chief Paula McDaniel. These complaints were never investigated.

15. In the midst of this accident, Plaintiff's treating physician placed Plaintiff on light duty work as a result of the extensive injuries sustained in the car accident.

16. On or about June 24, 2020, Plaintiff made a complaint about the mistreatment of CFD's canine. Specifically, Plaintiff became aware that the canine was outside during high/hot temperatures, on the pavement for an extended period of time, tethered to a water jug and left unattended by the handler resulting in an incident. The e-collar worn by the canine continued to be misused/abused.

17. During the first two weeks of July, Plaintiff made several complaints regarding CFD's canine's welfare and the improper sizing and tightness of the canine's therapy vest. The tightness of the vest restricted the canine's natural movement and caused rubbing and

discomfort. The improperly sized vest continued to be used on the canine for extended periods of time.

18. On or about July 14, 2020, Plaintiff provided CFD's canine handler with a larger proper fitting vest for the canine. This action was met with continued hostility toward Plaintiff.

19. Plaintiff participated in, developed and supported the CFD K-9 Program, and during her recovery and healing process, Plaintiff was referred to as "being slow," was harassed and teased with regard to her disability and light-duty status.

20. On or about October 15, 2020, Plaintiff made a complaint about the mistreatment of K-9 dogs. Specifically, Plaintiff noticed that the canine had numerous open sores and injuries on the body, taking pictures of these injuries.

21. CFD failed to investigate Plaintiff's complaints.

22. Plaintiff was increasingly given the "silent" treatment, isolated, intentionally excluded and avoided. Plaintiff was treated disrespectfully when spoken to, treated with animus and disrespectful actions by others.

23. Defendant's actions created an unprofessional and hostile work environment, all of which were witnessed by and brought to the attention of Plaintiff's supervisor, Chief Westover, who subsequently was promoted to Division Chief at the Charlotte Fire Department

24. On or about October 15, 2020, instead of investigating the mistreatment of the canine, Chief Matthew Westover gave Plaintiff a letter advising that the CFD's focus would be on an investigation of Plaintiff regarding her complaints about the canine program and the treatment of the canine.

25. Concurrent with this information, what followed was a chain of events set off by CFD to discredit Plaintiff. Chief Westover indicated further in his letter of October 15, 2020 that any complaints pertaining to Plaintiff's behavior would undermine the CFD K-9 Program and its mission to the public and the Charlotte Fire Department. Chief Westover referenced three incidents in that letter: one without a date, and two from July 14, 2020, the exact date Plaintiff made a complaint.

26. CFD has a policy that "complaints" should be investigated in a timely manner. However, Chief Westover brought forth this complaint on October 15,2020 that included alleged complaints against Plaintiff that were three months old and happened to coincide with the dates of Plaintiff's complaints against the department and the canine program.

27. Plaintiff made a complaint regarding the canine welfare and sores on October 15, 2020 and Chief Westover initiated an investigation against Plaintiff just hours later on October 15, 2020.

3

28. On or about December 18, 2020, Plaintiff made another complaint to Chief Matthew Westover and to Kim Sanders in Human Resources regarding the mistreatment of the canine. Additionally, and more specifically, Plaintiff brought to their attention a video from December 7, 2020 where the canine was being intentionally hit in the face, by the eyes, and objects bring thrown at the canines' face while muzzled. Plaintiff reiterated that these were the types of behaviors that gave her concern for the canine's welfare.

29. On or about January 7, 2021, Plaintiff received an Investigation of Misconduct Form (Form 208A).

30. On or about January 7, 2021, Plaintiff received a Substantiated Misconduct Form (Form 208B) stating that Plaintiff violated Rules of Conduct, and she was issued a Class B violation. Plaintiff vehemently disagreed with the findings and contends the punishment was created independent of and inconsistent with the city's guidelines for the alleged action. Plaintiff was given a documented verbal reprimand and six months probation for a false accusation and without being given the opportunity to grieve the occurrence.

31. The investigation form (Form 208A) and substantiated form (208B) were filed on the same day and Plaintiff's supervisor presented her with a letter, as opposed to a formal investigation form, for which she was to respond. There were significant discrepancies between the incidents that were referenced in the letter, the 208A and the 208B forms that Plaintiff did not receive until January 7, 2021. There were inaccurate, altered and manufactured representations relating back three months. This was not only a violation of policy, but Plaintiff never had the opportunity to rebut or defend herself of the alleged misconduct as against her.

32. Plaintiff continued to have issues with being subjected to bullying and harassment by her chain of command and other CFD employees. Plaintiff was subjected to a hostile work environment.

33. On or about February 23, 2021, Plaintiff contacted assigned CFD operations supervisors asking for help and assistance regarding the unaddressed issues she was having in the workplace.

34. As such, Plaintiff reached out to Chief Mike Clumpner, and on or about March 2, 2021, Plaintiff continued to speak with assigned Battalion Chief Michael Clumpner regarding the difficulties Plaintiff was having in the workplace.

35. When attempting to assist Plaintiff, on or around March 3, 2021, Chief Mike Clumpner was directed by his chain of command, his supervisor, Chief Bosche, to cease any and all efforts involving assisting or communicating with Plaintiff.

36. On or about March 5, 2021, Plaintiff was removed from her position within the CFD K-9 Program and was no longer permitted to work or assist with any aspect of the canine program for which she had developed. Plaintiff was also advised that her well-established seating location and desk was being moved.

37. These actions by CFD were restrictive, retaliatory and arbitrarily applied to Plaintiff; and on or about March 10, 2021, Plaintiff advises CFD Command Staff she will be filing a complaint of retaliation for ongoing actions taken against her.

38. The actions taken by Defendant, through CFD, against Plaintiff were adverse to the terms and conditions of her employment and Plaintiff is refused requested documentation, information is intentionally withheld from her, and she experiences bullying, harassment and intimidation tactics.

39. Plaintiff was on light duty until around March 30, 2021 until CFD revoked her light duty on March 31, 2021, almost immediately following Plaintiff's latest complaint against the mistreatment of the K-9 unit. civilian employees, and almost immediately following Plaintiff's latest complaint and inquiry made by Plaintiff to the newly assigned light duty supervisor, retired CFD Battalion Chief and civilian employee Rebecca Brown. The inquiry was about intentional and malicious acts by civilian employees of CFD Fire and Life Safety Education, who coincidentally were currently the only CFD employees actively working with the CFD K-9 program.

40. CFD has had a number of male employees on light duty assignment with medical conditions and injuries whose light duty assignment(s) were not revoked by CFD.

41. On or about March 31, 2021, Plaintiff was informed by Deputy Chief Jerry Winkles, under the signature of Fire Chief Reginald Johnson, that they were revoking Plaintiff's light duty, and she could only return to work when she was fully cleared to work on the fire apparatus.

42. Upon information and belief, CFD has allowed at least three male employees, D.A., S.R., and D.M., to work light duty status long term, until retirement and without a requirement to return to work only upon full clearance to work on the fire apparatus.

43. Specifically, one white male individual, D.A., who had a heart issue that removed him from working the fire apparatus was allowed to remain on light duty for several years and a specific position was created for him listed under "Special Assignment."

44. Pending a response to her FMLA application after being told she was removed from light duty and could only return to work when she was fully able to work the fire apparatus, on or around April 2021, Plaintiff applied for FMLA and short term disability.

45. On October 1, 2021, UNUM, the Defendant and CFD's disability carrier denied Plaintiff's application for short term disability.

46. In the denial, UNUM indicated that CFD had Plaintiff listed as an "Office Assistant" with March 31, 2021 as her last day worked, instead of listing her position as a Firefighter.

47. Inter alia, Plaintiff's recent pay stubs and job title documented her position as a Firefighter; and it was documented by CFD on both Forms 208A and 208B that Plaintiff

5

was a Firefighter. More relative, Plaintiff's position of Firefighter was documented on the city's FDM Employee Locator; and as of the date of this Complaint, Plaintiff's job title and position remains listed as Fire Fighter II.

48. Defendant by way of CFD, misrepresented Plaintiff's information and job title to the disability carrier causing Plaintiff to be denied the ability to receive short term and long term disability benefits.

49. Defendant never formally terminated Plaintiff, but Plaintiff was constructively terminated when Defendant denied Plaintiff employee access, information, service and training opportunities, denied Plaintiff access to benefits, for which she had paid premiums, denied Plaintiff a source of income, and denied Plaintiff the opportunity and right to work unless she could meet the full requirements of working on the fire apparatus without any restrictions, having full knowledge that Plaintiff's doctor indicated Plaintiff needed to work under a light duty assignment.

### III. CLAIM OF RELIEF: SEX DISCRIMINATION

50. The foregoing paragraphs are re-alleged and incorporated by reference herein.

51. Defendant, by and through, CFD treated similarly situated male employees more favorably than Plaintiff and other female employees evidenced further by a culture that continues to be entrenched with fear, retaliation and discrimination perpetuated by leadership.

52. CFD had a practice where it allowed white male employees to remain on light duty assignment without expiration; whereas Plaintiff's light duty was attempted to be revoked for the first time under the explanation that her light duty had expired, when there was no such policy for males; and subsequently, her light duty was revoked in 2021 after Plaintiff was told she could no longer remain on light duty.

53. Not only are females underrepresented as Firefighters in the CFD, Defendant did not apply the same policies even-handedly to females as males, and more specifically to Plaintiff.

54. Plaintiff was and has been denied the opportunity to work, and her male counterparts were allowed to work with light duty for extended periods of time and in some cases up to and through retirement.

55. Plaintiff has been treated differently than her male counterparts, including but not limited to the creation of special assignments and operations for the male firefighters; withdrawn performance reviews for Plaintiff resulting in limited, if any, merit and pay increases, and CFD excluded Plaintiff from participating in training that was reserved for her male counterparts, for whom training was made available, even when Plaintiff's male counterparts were injured and/or on light duty assignments.

56. As a direct result of Defendant's actions, Plaintiff has suffered damages including economic, physical and emotional distress.

57. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* and 42 U.S.C. § 1983.

## IV. CLAIM OF RELIEF: RETALIATION

58. The foregoing paragraphs are re-alleged and incorporated by reference herein.

59. Plaintiff has suffered ongoing retaliation at the hands of CFD as a pattern and practice since the filing of Plaintiff's 2016 complaints and her first EEOC Charge in 2019 to more recent complaints in 2020 and 2021, for which she filed a new EEOC Charge on September 27, 2021.

60. Plaintiff complained about disparate treatment, mistreatment of herself, other female employees, a hostile work environment, and the treatment of the canines.

61. After Plaintiff's complaints, she was given a rules of conduct violation and was told that she was being removed from a light duty assignment, was refused short term disability and other benefits to which Plaintiff would have otherwise been eligible had it not been for CFD's actions.

62. Defendant, by and through CFD, admitted in the March 31, 2021 letter that the light duty revocation was in response to Plaintiff's complaint about the treatment of the canines.

63. Additionally, in the same letter, Chief Johnson indicated Plaintiff received a misconduct complaint in 2019 that was allegedly substantiated, yet this complaint was not substantiated.

64. Defendant revoked Plaintiff's light duty assignment as retaliation for her lawful complaints, including those regarding the K-9 Program.

65. Plaintiff has been harmed financially, physically and emotionally by being removed and isolated from a career to which she was devoted since 2010.

66. Defendant's acts and omissions have been willful and committed with malice and/or a reckless disregard for Plaintiff's federally protected rights.

67. Defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq.* The stated reasons to Plaintiff and others for the Defendant's conduct were not the true reasons, but instead were pretext to hide the Defendant's discriminatory and retaliatory animus.

68. Accordingly, Plaintiff is entitled to recover compensatory and punitive damages.

7

## V. CLAIM OF RELIEF: DISABILITY - FAILURE TO ACCOMMODATE

69. The foregoing paragraphs are re-alleged and incorporated by reference herein.

70. Defendant had a practice of accommodating Plaintiff's counterparts, but failed to accommodate Plaintiff with an equivalent opportunity for light duty assignments.

71. Defendant has allowed others to work light duty assignments for long term and up to retirement, even creating special positions for those employees.

72. Defendant denied Plaintiff these reasonable accommodations and failed to provide her any alternatives that met her medically approved restrictions.

73. Defendant failed to engage in an interactive process with Plaintiff prior to revoking her light duty assignment on March 31, 2021.

74. The requested accommodations were not shown to and did not cause Defendant any undue hardship as those accommodations were allowed for other employees.

75. Plaintiff has been harmed financially, physically and emotionally by Defendant's failure to provide her reasonable accommodations.

76. The Defendant's conduct and failure to accommodate constitutes a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*.

## VI. NEGLIGENT MISREPRESENTATION

77. The foregoing paragraphs are re-alleged and incorporated by reference herein.

78. At all times pertinent to this action, Defendant, through its representatives, managers, officers and employees, had a duty to Plaintiff to act with reasonable care in providing information concerning Plaintiff's rights and eligibility to FMLA, short term disability benefits, long term disability benefits and any restrictions on her work for Defendant.

79. Defendant informed a third party, UNUM, the disability administrator, that Plaintiff's job title was that of an "Office Assistant."

80. Plaintiff has not held a title of Office Assistant while being employed by Defendant.

81. Based on the final decision of UNUM, as described above and its letter, Defendant through CFD, and its other agents of CFD and Defendant, violated its duty of care in misrepresenting to UNUM and to Plaintiff that Plaintiff was not eligible for short term disability benefits because her last day worked was on March 31, 2021 as an Office Assistant.

8

82. This information had a material impact on Plaintiff's ability to receive approval for short-term disability benefits, while ultimately impacted Plaintiff's ability to receive long term disability benefits, for which Plaintiff was left no choice but to rely upon to her detriment, once she was denied coverage.

83. Absent any evidence of bad faith or collusion, without regard to Plaintiff's documented paystubs and medical records provided by her physician, UNUM, on the representation of Defendant and CFD, denied Plaintiff short term disability benefits and acted on this information as provided by CFD.

84. Plaintiff was denied short term disability benefits and thus was harmed financially by being unable to receive any short term disability benefits income from April 1, 2021 to present.

85. Defendant willfully and malicious misrepresented Plaintiff's employment status with the third-party administrator and possibly with others regarding Plaintiff's role with CFD.

86. As a proximate result of Defendant's misrepresentations, Plaintiff has been harmed substantially by Defendant's actions, incurred and suffered, and may continue to incur and suffer substantial losses of her short term and ultimately long term disability benefits for which she would have been considered, based on the medical information provided, and for which she earned through her years of employment, payment of premiums which were in excess of the benefits she received; mental anguish, physical and emotional distress; and other losses for which she is entitled to compensatory damages.

87. Accordingly, Plaintiff is entitled to recover compensatory and punitive damages.

### VII. VIOLATION OF ARTICLE I, SECTION 19 OF THE CONSTITUTION OF THE STATE OF NORTH CAROLINA

88. The foregoing paragraphs are re-alleged and incorporated by reference herein.

89. Plaintiff alleges she has a property interest in her employment with Defendant and Section 1, Article I, of the Constitution of North Carolina guarantees to the citizens of the State "the enjoyment of the fruits of their own labor" and declares this an inalienable right, and Defendant and CFD prevented Plaintiff from being able to pursue her chosen profession and other employment, without unreasonable actions and interference, and based on the restrictions imposed by Defendant and CFD.

90. The effects of unemployment on society and the economy do not promote the general welfare of the citizens, and when such unemployment is caused by an employer, that contravenes this public policy for the good of all.

91. Defendant, by and through CFD, acted arbitrarily and capriciously when they disciplined Plaintiff without regard to policy, denied Plaintiff an investigation into her claims, denied her the ability to grieve and appeal the alleged misconduct and disciplinary process despite the CFD's own rules and policies setting out the processes.

92. Defendant alleges and further states that she was summarily denied the opportunity and request to file a grievance, not only when her claims and complaints were not investigated, but also when Human Resources Kim Sanders, after January 7, 2021, communicated to Plaintiff she could not file a grievance because the actions taken against her were not a grievable item when she wasn't demoted or terminated despite it being part of the complaint process, and subsequently, the disciplinary process.

93. Defendant and CFD acted under color of state and local laws by denying Plaintiff her constitutional right to work in an environment free from harassment, discrimination and retaliation pursuant to and guaranteed by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. § 1983.

94. Defendant and CFD acted under color of state and local laws by denying Plaintiff her constitutional right to work in an environment free from harassment, discrimination and retaliation pursuant to and guaranteed by Article I, Section 19 of the North Carolina Constitution.

95. Plaintiff alleges at all times alleged herein, she was qualified for multiple assignments and positions, including light duty positions at the CFD, and was prohibited from working outside of the CFD while remaining employed by the Defendant and CFD; and further was subjected to disparate treatment due to her gender/sex in terms of the work conditions, privileges, benefits and work environment.

96. Plaintiff contends that Defendant's reason for removing her from a viable source of income, any form of work and benefits, yet refusing to terminate her was pretextual, punitive and retaliatory.

97. Plaintiff alleges that Defendant knew or should have known that CFD and its employees, including the Chief, were unjustifiably treating her differently than male employees. Notwithstanding, Defendant did nothing, and its actions perpetuated the cycle. Further, Defendant's failure to act accordingly, effectively ratified and condoned the adverse treatment of Plaintiff.

98. Plaintiff contends that as a result of Defendant's discriminatory and retaliatory treatment toward her, she has suffered and continues to suffer physical manifestations of trauma and emotional distress, including but not limited to, insomnia, fear, chronic depression, chronic anxiety and stress.

99. Plaintiff had a protected property and liberty interest in her employment and the manner in which the Defendant has denied Plaintiff employment, violated her rights under the N.C. State Constitution and thus violates the public policy as express in the N.C. State Constitution.

100. Additionally, as a proximate result of Defendants' violations of the public policy of North Carolina, as against Plaintiff, and thus by reason of denying Plaintiff full participation and interest in her employment by denying her the fruits of her labor , Plaintiff has incurred and suffered

substantial actual damages, including lost income (past and future) and benefits and other economic losses, past and future mental anguish and emotional distress, whereby Plaintiff's distress has resulted in both emotional and physical problems, including but not limited to generalized anxiety and depressive episodes, plaintiff's enjoyment of life was impacted negatively, employment reputation and other losses to be proven at trial in *excess* of $25,000, together in interest thereon at the prevailing rate.

## VIII. EXHAUSTION OF ADMINISTRATIVE REMEDIES

101. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 430-2021-02602, dated September 27, 2021 (Exhibit A). The EEOC issued a Notice of Right-To-Sue on March 29, 2022 (Exhibit B). Plaintiff is filing this action within ninety (90) days of receiving the Notice of Right-To-Sue. She has complied with all jurisdictional requirements and has exhausted administrative pre-requisites before initiating this action.

## 1. PRAYER FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court grant the following relief:

1. Lost wages, salary, employment benefits and other compensation that was lost due to Defendant's actions in violation of Title VII, 42 U.S.C. § 2000e *et seq*., and the Americans with Disabilities Act 42 U.S.C. § 12101, *et seq*., 42 USC § 1983, and the N.C. State Constitution.

2. A judgment in favor of Plaintiff and against Defendant for the emotional distress, physical pain and suffering caused by Defendant's retaliation against Plaintiff.

3. Award plaintiff back pay and front pay and any other compensatory damages suffered by Plaintiff which were caused by Defendant's actions as alleged herein.

4. Award Plaintiff punitive damages as provided by federal law for Defendant's actions alleged herein.

5. The Court award Plaintiff an award for costs and reasonable attorney's fees and other litigation expenses pursuant to § 706(k) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(k).

6. Trial by jury.

7. The Court order such other and further relief as it may deem just and appropriate.

This the 23rd day of June 2022.

/s/Lawrence D. Wooden
Lawrence Wooden
Wooden Bowers Vinson PLLC
NC Bar #:47199
8420 University Exec. Park Dr. Suite 810
Charlotte, North Carolina 28262
Telephone: 704-665-5838
Facsimile:   704-973-9380
Email: lwooden@wbvlaw.com
*Attorney for the Plaintiff*

12