# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:22-CV-00284-RJC-DSC

| | |
|---|---|
| MEGAN AKSTIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF CHARLOTTE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on the "City of Charlotte's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice," Doc. 10, and the parties' associated briefs and exhibits, Docs. 11-12.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted in part and denied in part</u> as discussed below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Accepting the allegations of the Amended Complaint, Doc. 8, as true, Plaintiff filed this action related to her employment with Defendant as a Firefighter II. Defendant has employed her as a Firefighter since 2010. On or about September 26, 2016, while off-duty, Plaintiff was involved in a serious automobile accident. She was placed on light duty due to her injuries. In 2020 and

2021, Plaintiff made several complaints regarding treatment of canines in the Fire Department. She was removed from any involvement with the canine program on or about March 10, 2021. Plaintiff informed her supervisor that she would be filing an EEOC claim for retaliation. On March 31, 2021, she was informed that Defendant was revoking her light duty status. She could return to work upon being cleared to work on the fire apparatus. Subsequently, Plaintiff applied for disability through UNUM, Defendant's disability provider. Defendant misrepresented to UNUM that Plaintiff was an Office Assistant instead of a Firefighter, resulting in her being denied short-term and long-term disability benefits.

On September 27, 2021, Plaintiff filed a charge with the EEOC alleging discrimination based upon her sex and disability and for retaliation. The EEOC issued a Notice of Right to Sue on March 29, 2022.

Plaintiff brings claims alleging: (1) sex discrimination under Title VII and 42 U.S.C. §1983; (2) retaliation under Title VII; (3) failure to accommodate under the Americans with Disabilities Act; (4) negligent misrepresentation; and (5) violation of Article 1, Section I and Section 19 of the North Carolina Constitution.

Defendant filed this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that Plaintiff's claims are time barred and the Complaint falls short of the minimum pleading requirements for her multiple claims.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 546. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper[-]technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-

"that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 326 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke, 490 U.S. at 327; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

#### A. Exhaustion of Administrative Remedies and Scope of the EEOC Charge

"Prior to pursuing a Title VII claim in federal court, a plaintiff must exhaust her administrative remedies by filing a charge of discrimination with the [EEOC]." Hentosh v. Old Dominion Univ., 767 F.3d 413, 416 (4th Cir. 2014); see 42 U.S.C. § 2000e-5(b), (e)(1), (f)(1). In Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1850-51 (2019), the Supreme Court held that failure to exhaust administrative remedies is grounds for dismissal pursuant to Rule 12(b)(6) rather than 12(b)(1). This "exhaustion requirement is a non-jurisdictional 'processing rule, albeit a mandatory one' that must be enforced when properly raised." Walton v. Harker, 33 F.4th 165, 175 (4th Cir. 2022) (quoting Fort Bend Cnty., 139 S. Ct. at 1851A). Since Fort Bend Cty. was decided, courts in this District have repeatedly held that a plaintiff's failure to exhaust administrative remedies applicable to discrimination claims warrants dismissal under Rule 12(b)(6). See, e.g., Krings v. AVL Techs., 1:20-CV-259-MR-WCM, 2021 WL 1235129, at *3 (W.D.N.C. Feb. 10,

2021) (dismissing plaintiff's claims where plaintiff filed suit before the EEOC had issued a right-to-sue letter); Gill v. Coca-Cola Bottling Co. Consol., No. 3:18-cv-681-MOC-DSC, 2019 WL 4439496, at *3 (W.D.N.C. Sept. 16, 2019) (dismissing discrimination claims plaintiff failed to raise in his EEOC Charge under Rule 12(b)(6) for failure to exhaust administrative remedies); see also McCaskey v. U.S.P.S., No. 3:18-cv-411-RJC-DCK, 2021 WL 1537793 (W.D.N.C. Mar. 26, 2021) (dismissal of ADA claim warranted under 12(b)(6) for failure to exhaust administrative remedies with the EEOC).

While Ford Bend Cty. involved a Title VII claim, the rule announced there also applies to Plaintiff's ADA claim here. See Stewart v. Jones Util. & Contracting Co. Inc., No. 19-14115, 2020 WL 1313636, at *1 (11th Cir. Mar. 19, 2020) (citing Fort Bend Cty., 139 S. Ct. at 1846, 1849, 1851 (2019)) (requirement that plaintiff exhaust her administrative remedies with the EEOC before filing a complaint under Title VII or the ADA "is a mandatory claims-processing rule, not a jurisdictional prerequisite[.]"); Cowgill v. First Data Techs., Inc., No. CV ADC-19-2565, 2020 WL 551913, at *3 (D. Md. Feb. 4, 2020) ("Though the Supreme Court in Davis [Fort Bend Cty.] was addressing a Title VII Charge, plaintiffs must follow identical EEOC procedures when bringing a Charge of Discrimination under both Title VII and the ADA.").

Under Title VII, an aggrieved individual must file a complaint with the EEOC "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). Before filing a lawsuit alleging employment discrimination under the ADA, a plaintiff must exhaust her administrative remedies before the EEOC. See Underdue v. Wells Fargo Bank, N.A., No. 3:14cv183, 2016 WL 3452492, at *2 (W.D.N.C. June 6, 2016) (noting that "the ADA, Title VII, and the ADEA share enforcement procedures, including the requirement that a plaintiff must first exhaust administrative remedies before filing a federal lawsuit").

Plaintiff contends that Defendant violated the ADA and Title VII by engaging in discriminatory conduct in October 2020, December 2020, January 2021, and March 2021. She did not file her Charge of Discrimination with the EEOC until September 27, 2017. Any claim arising before March 31, 2021 – 180 days prior to September 27, 2021 – is time-barred. See Davis v. Weiser Sec. Servs., No. 3:13-cv-00522-MOC-DSC, 2016 WL 818913, at *3 (W.D.N.C. Feb. 3, 2016) (recommending defendant's motion to dismiss pro se plaintiff's complaint be granted where plaintiff failed to file EEOC Charge within the requisite 180 days of alleged discriminatory act). See also Reid v. Charlotte Mecklenburg Board of Ed., No. 3:14-cv-00066-FDW-DSC, 2015 WL 4941794, at *2 (W.D.N.C. Aug. 19, 2015) (granting motion to dismiss where plaintiff filed charge of discrimination 268 days after the discriminatory act occurred, as only claims arising within 180 days prior to the filing of a Charge of Discrimination with the EEOC are actionable). Accordingly, the undersigned respectfully recommends that Plaintiff's claims based upon events in October 2020, December 2020 and January 2021 are time barred and should be dismissed. Plaintiff's claims based upon events arising on or after March 31, 2021 are timely.

### B. Sex Discrimination Claim

To state a sex discrimination claim, a plaintiff "must show that (1) she is a member of a protected class, (2) she suffered adverse employment action, (3) her performance met her employer's legitimate expectations at the time of the adverse employment action, and (4) the action occurred under circumstances permitting a reasonable inference of sex discrimination." Boney v. Trs. of Cape Fear Cmty. Coll., 366 F.Supp.3d 756, 764 (E.D.N.C. Mar. 5, 2019) (citing Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc), abrogated on other grounds by Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013)).

The Court is mindful that a Title VII plaintiff need not satisfy all the elements set forth above to survive a motion to dismiss. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 ("The prima facie case under McDonnell Douglas, however, is an evidentiary standard, not a pleading requirement."). Instead, at the motion to dismiss stage, a plaintiff need only "allege[ ] facts that plausibly state a violation of Title VII 'above a speculative level.'" Bing v. Brivo Sys., LLC, 959 F.3d 605, 617 (4th Cir. 2020) (quoting Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010)), cert. denied, 141 S.Ct. 1376 (2021). This requirement can be met by showing that "similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

Defendant argues that Plaintiff's claim must be dismissed because she (i) states that her light duty status was revoked based upon retaliation and not gender; (ii) does not assert any facts establishing that she was fulfilling her employer's legitimate expectations; and (iii) fails to establish a similarly situated employee received a benefit based upon sex. The Court disagrees. These conclusions cannot be gleaned from reading the pleadings in the light most favorable to Plaintiff. Construing Plaintiff's allegations liberally, she has alleged that she is female and satisfactorily performed the duties assigned to her. Her adverse employment action occurred beginning on March 31, 2021, when she was taken off light duty and stopped receiving pay. In addition, Plaintiff alleged that at least three white males were allowed to work on light duty status long term, a benefit she was denied. Since Defendant afforded these male employees a benefit that Plaintiff was not afforded, it gives rise to an inference of unlawful discrimination. McCaskey v. Henry, 461 F. App'x 268, 280 (4th Cir. 2012). Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss this claim be denied.

C. Retaliation Claim

To state a Title VII retaliation claim, a "plaintiff must prove (1) [s]he engaged in protected conduct, (2) [s]he suffered an adverse action, and (3) a causal link exists between the protected conduct and the adverse action." Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 154 (4th Cir. 2012). To prevail, plaintiff must show that "the desire to retaliate was the but-for cause of the challenged employment action." Villa v. CavaMezze Grill, LLC, 858 F.3d 896, 900 (4th Cir. 2017) (citations omitted) (quotations omitted). Employers are prohibited from taking "adverse employment action against an employee for opposing discriminatory practices in the workplace." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).

Adverse actions in the retaliation context are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53, 57 (2006). But "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." Id. at 68. A "tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). "A tangible employment action in most cases inflicts direct economic harm." Id. at 762.

Plaintiff asserts that Defendant retaliated against her "since the filing of her 2016 complaints and her first EEOC Charge in 2019 to more recent complaints in 2020 and 2021, for which she filed a new EEOC Charge on September 27, 2021." Doc. 8, ₱ 70. She further asserts that she "complained about disparate treatment, mistreatment of herself and other female employees, a hostile work environment and treatment of canines, which had the impact of violating

the animal cruelty laws of the state of North Carolina, pursuant to N.C. Gen. Stat. § 14-360." Id. at ¶ 71.

As explained above, Plaintiff's claims regarding retaliation arising before March 31, 2021 are untimely. Additionally, her complaints regarding the treatment of canines do not support a claim for retaliation. Those activities were not related to making a charge, testifying, assisting or participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C.A. § 2000e-3(a). Plaintiff's September 27, 2021 EEOC charge is covered under Title VII. But it has not been causally connected to any adverse action Plaintiff claims to have suffered. She filed the EEOC Charge on September 27, 2021, more than 180 days after she was removed from her light duty assignment. She cannot establish any causal connection between her removal from light duty and an EEOC charge that was filed months later. Consequently, the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted.

### D. Failure to Accommodate Disability Claim

The Americans with Disabilities Act generally prohibits employers from discriminating against a qualified individual on the basis of disability. 42 U.S.C. § 12112(a). "One form of discrimination is failing to make a reasonable accommodation for a disabled employee's "known physical or mental limitations, unless the employer can demonstrate that the accommodation would impose undue hardship on its business." 42 U.S.C. §12112(b)(5)(A). To show an employer failed to accommodate, a plaintiff must prove that: 1) she had a disability within the statutory meaning, 2) the employer knew of her disability; 3) a reasonable accommodation would permit her to perform the essential functions of her position; and 4) the employer failed to make the accommodation. Perdue v. Sanofi-Aventis U.S., LLC, 999 F.3d 954 (4th Cir. 2021). Implicit in

the fourth prong is that the employer and employee engage in an interactive process. Crabill v. Charlotte Mecklenburg Board of Educ. (4th Cir. 2011).

Defendant argues that Plaintiff's claim must be dismissed because she (i) fails to plead sufficient facts to establish she has a disability under the ADA; (ii) fails to assert that she can perform the essential functions of her job as a Firefighter II; and (iii) fails to provide a reasonable accommodation that would allow her to perform the essential functions of her job. Plaintiff argues that she has alleged enough at this stage of the proceedings to proceed with her claim.

An individual can establish a qualifying "disability" under the ADA by showing that she has: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In deciding whether an employee is disabled, courts interpret the ADA and its amendments broadly "in favor of expansive coverage, keeping in mind that the language is not meant to be a demanding standard," but the employee must meet the ADA's definition of disability at the time the employer took adverse action against her. EEOC v. Loflin Fabrication, LLC, 462 F. Supp. 3d 586, 599–600 (M.D.N.C. 2020) (citation omitted).

The Court finds Pope v. ABF Freight Sys., Inc., No. 3:17-cv-564-GCM, 2018 WL 3551528 (W.D.N.C. July 24, 2018) instructive here. In Pope, District Judge Graham C. Mullen applied the facts to the statutory requirements and held:

> Here, Pope has merely alleged that the injury he suffered "qualifies as a disability," that he was in "substantial pain" one day after the incident, and that a doctor concluded he needed to be placed on "light duty." Pope does not allege any specific facts about the nature of the injury, the expected duration of his impairment, or how it limited his major life activities beyond stating that he needed to be placed on "light work." Nor does he allege any history of injury or impairment that has substantially limited his abilities in the past. Accordingly, the Court finds that Pope's allegations are conclusory in nature and do not rise to the level of plausibility. Thus, he has not alleged sufficient facts to show that his injury created

> an "actual disability" or a "record of" disability under the ADA, and his failure to accommodate claim must be dismissed.

Id. at *3–4. Plaintiff makes a similar conclusory argument in her Amended Complaint. While she alleges "extensive injuries sustained in the car accident," she never pleads that she is disabled, the nature of her injury or how it impacted her life to raise an inference of a disability. See Jones v. HCA, 16 F.Supp.3d 622, 632 (E.D. VA. 2014).

Plaintiff also bears the burden of "identifying an accommodation that would allow a qualified individual to perform the job" and showing "that such an accommodation is reasonable." Shin v. Univ. of Md. Med. Sys. Corp., 369 F. App'x 472, 781 (4th Cir. 2010). The ADA states that "reasonable accommodation' may include ... job restructuring, part-time or modified work schedules, [and] reassignment to a vacant position." 42 U.S.C. § 12111(9)(B). A reasonable accommodation "does not require an employer to reallocate essential job functions or assign an employee 'permanent light duty'." Crabill v. Charlotte Mecklenburg Bd. of Educ., 423 F. App'x 314, 323 (4th Cir. 2011).

The Court finds that the Amended Complaint is devoid of facts showing the essential functions of Plaintiff's position as a Firefighter II and whether she could have performed those functions with a reasonable accommodation. In fact, the Amended Complaint neither describes the job duties and essential functions associated with her position as Firefighter II, nor states how the requested accommodation of light duty would have allowed Plaintiff to perform those essential job functions. In sum, Plaintiff fails to allege facts in the Amended Complaint to plausibly show that she could perform the essential functions of her position with a reasonable accommodation. See Stephenson v. Pfizer, Inc., 641 F. App'x 214, 219 (4th. Cir. 2016) (per curiam) ("A reasonable accommodation ... is one that enables a qualified individual with a disability to perform the

essential functions of a position.") (internal quotation marks omitted). For these reasons, the Amended Complaint fails to state a plausible claim for failure to accommodate under the ADA. Scott v. Lori, No. 19-2014, 2020 WL 3833129, at *16 (D. Md. July 8, 2020) (dismissing the plaintiff's ADA failure-to-accommodate claim because the complaint failed to make any allegations regarding "plaintiff's job responsibilities" and merely referenced job functions, but never explicitly state what those functions entailed). The undersigned respectfully recommends that Defendant's Motion to Dismiss this claim be granted.

### E. Negligent Misrepresentation Claim

North Carolina has adopted the definition of negligent misrepresentation as set forth in the Restatement (Second) of Torts under which:

> [o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Lamb v. Styles, 824 S.E.2d 170, 177 (N.C. App. 2019) (quoting Restatement (Second) of Torts § 552 (1977)). "It has long been held in North Carolina that 'the tort of negligent misrepresentation occurs when (1) a party justifiably relies (2) to his detriment (3) on information prepared without reasonable care (4) by one who owed the relying party a duty of care.'" Simms v. Prudential Life Ins. Co. of Am., 537 S.E.2d 237, 240 (N.C. App. 2000) (quoting Raritan River Steel Co. v. Cherry, Bekaert & Holland, 367 S.E.2d 609, 612 (N.C. 1988) (cleaned up)); see also, T.W.T. Distributing, Inc. v. Johnson Products Co., Inc., 966 F.Supp.2d 576, 582 (W.D.N.C. 2013). "Such a duty commonly arises within professional relationships." Rountree v. Chowan County, 796 S.E.2d 827, 832 (N.C. App. 2017).

Federal Rule of Civil Procedure 9(b) mandates a heightened standard for pleading a claim for fraud or mistake. Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F.Supp.3d 722, 725 (M.D.N.C. 2015). To meet this standard, the plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby," otherwise known as the "who, what, when, where, and how" of the alleged fraud. U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quotation marks omitted). This Court has previously held the heightened pleading standard applies to negligent misrepresentation claims. Beckley v. Priority Auto Grp., Inc., No. 3:21-CV-00072-RJC-DSC, 2022 WL 899453, at *7 (W.D.N.C. Mar. 28, 2022).

Defendant argues that Plaintiff is seeking to recover from UNUM, a non-party to this action, and attempting to hold Defendant liable for UNUM's conduct. The Court disagrees.

The recent analysis of a negligent misrepresentation claim in Arku v. Wells Fargo Bank, N.A., No. 3:22-cv-225-RJC-DCK, 2022 WL 3364315 (W.D.N.C. August 15, 2022) is especially instructive. In Arku, plaintiff asserted a negligent misrepresentation claim against her former employer for allegedly providing inaccurate credit information and causing her to lose multiple job opportunities. The former employer moved to dismiss for failure to state a claim. In analyzing the negligent misrepresentation claim, District Judge Robert J. Conrad, Jr. found:

> Accepting all the well-pleaded facts as true, the Complaint states facts sufficient to meet all the elements of a negligent misrepresentation claim. First, it is plausible that Plaintiff's former employer, Wells Fargo, owed her a reasonable duty of care when reporting information relating to her credit. Second, the Complaint states that Wells Fargo continued to report false information after Plaintiff repaid the overpayment. This shows that Wells Fargo may have breached its duty to Plaintiff by reporting the information without reasonable care. Third, Plaintiff relied on Wells Fargo's assertion that it would remove the overpayment notice. And fourth, her reliance on Wells Fargo's reporting led to her detriment as she lost multiple job opportunities when Wells Fargo failed to remove the notice.

> Moreover, the Complaint meets the heightened pleading standard under Rule 9(b) because it states the "who, what, when, where, and how" of the alleged mistake. U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008). For example, in the Complaint, the "who" is identified as Wells Fargo, who allegedly committed negligent misrepresentation; the "what" is identified as Wells Fargo's failure to remove the overpayment notice; the "when" is 2018 to 2020, the time period when the alleged breach occurred; the "where" is on Plaintiff's credit report; and the "how" is that Wells Fargo failed to remove the notice after Plaintiff repaid the overpayment, in contravention of the agreement between the parties. Plaintiff's failure to specifically identify the employee(s) she communicated with at Wells Fargo is not fatal to her claim at this time as the Complaint meets the heightened pleading standard.
>
> Moreover, "there is no requirement that any precise formula be followed or that any certain language be used," and "[i]t is sufficient if, upon a liberal construction of the whole pleading, the charge of fraud might be supported by proof of the alleged constitutive facts." Bear Hollow, LLC v. Moberk, LLC, No. 5:05-CV-210, 2006 WL 1642126, at *5 (W.D.N.C. June 5, 2006). "Significantly, a court should not dismiss a complaint pursuant to Rule 9(b) if the court is satisfied that the defendant has been made aware of the particular circumstances for which he will have to prepare a defense at trial." Id. at 5. In this respect, Wells Fargo has been made aware of the negligent misrepresentation claim against it that stems from its failure to remove the notice after Plaintiff repaid the overpayment, resulting in lost employment opportunities for Plaintiff. Accordingly, Defendant's motion to dismiss the negligent misrepresentation claim is denied.

Arku, 2022 WL 3364315, at *5-6.

Like the court in Arku, this Court concludes that at this stage of the proceedings and taking the facts in the light most favorable to Plaintiff, there are sufficient facts to support a negligent misrepresentation claim. Defendant, Plaintiff's employer, owed her a reasonable duty of care when reporting information concerning her rights and eligibility for FMLA, short-term disability benefits, long-term disability benefits and any restrictions on her work. Second, Plaintiff relied on Defendant's representations that its information regarding her work and compensation benefits, eligibility, dates of employment and title were accurate and in compliance with North Carolina law. Defendant represented to UNUM, the disability administrator, that Plaintiff's job title was Office Assistant and not Firefighter II. Because Defendant supplied UNUM with information that it knew or should have known was false or inaccurate, UNUM denied Plaintiff disability coverage.

She was deprived of her short-term and long-term disability benefits, which would have been a primary source of income, as a result of the denial. Defendant owed her a duty of care in communicating accurate information to UNUM. By failing to provide accurate information, Defendant breached that duty of care.

The Court further finds that the Complaint meets the heightened pleading standard under Rule 9(b) by stating the "who, what, when, where, and how" of the alleged misrepresentation. U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008).

For those reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss this claim be denied.

### F. North Carolina Constitution Claims

Defendant argues that Plaintiff's claims under the North Carolina Constitution combine legal theories and conclusory statements which fail to state a plausible claim. The Court agrees.

#### a. Article I, Section 1 of North Carolina Constitution Claim

The North Carolina Constitution recognizes that "all persons" have been "endowed by their Creator with certain inalienable rights." N.C. Const. art. I, § 1. One of those rights is "the enjoyment of the fruits of [one's] own labor." Id. The fruit-of-one's-labor clause gives public employees a direct cause of action against their governmental employers. Tully v. City of Wilmington, 810 S.E.2d 208, 213 (N.C. 2018). To succeed on a fruit-of-one's-labor claim, a public employee must satisfy four elements. First, the employee must show that "no other state law remedy is available." Id. at 216. Second, she must identify "an internal employment policy that was 'clear [and] established'" and that "furthered a legitimate governmental interest." Mole' v. City of Durham, 866 S.E.2d 773, 780 (N.C. Ct. App. 2021) (quoting Tully, 810 S.E.2d at 216)

(alteration in original). She must then show that "the employer violated th[e] policy" and that she "was injured as a result of that violation." Tully, 810 S.E.2d at 216.

Plaintiff alleges that Defendant implemented a rule related to light duty as a Firefighter and violated its own rule by not applying it to her in the same manner as it did to male employees. She fails to "allege the existence and violation of an internal employment policy that was 'clear [and] established.'" Mole', 866 S.E.2d at 780 (quoting Tully, 810 S.E.2d at 216) (alteration in original). "Tully protects public employees from unreasonable violations of employment policies, not field operating or training procedures that do not bear upon internal processes governing the employer-employee relationship." Id. Plaintiff's Complaint also fails to satisfy the first element. She does not allege a lack of state law remedies.

The undersigned respectfully recommends that Defendant's Motion to Dismiss this claim be granted.

### b. Article I, Section 19 of North Carolina Constitution Claim

Article 1, Section 19 of the North Carolina Constitution provides for equal protection and due process. The North Carolina Supreme Court interprets the Fourteenth Amendment of the Federal Constitution and Article 1, Section 19 of the North Carolina Constitution in the same manner. See Tri-Cty. Paving, Inc. v. Ashe Cty., 281 F.3d 430, 436 n.6 (4th Cir. 2002); see also Hadley v. City of Mebane, No. 1:18 CV 366, 2020 WL 1539724, at *19 (M.D.N.C. Mar. 31, 2020).

North Carolina law does not provide Plaintiff with the property interest entitlement she claims. "At-will employees have no property interests in their employment cognizable under the due process clause." Privette v. Univ. of N.C., 385 S.E.2d 185, 192 (1989). This rule applies to both private and public employment. Mole', 866 S.E.2d at 782. The state may create a property

interest in employment by statute, ordinance, or express or implied contract. Id. In the absence of any of these, no such interest exists. Id.

Plaintiff alleges that she has a property right to her continued employment and a property interest in her position with Defendant. But she fails to assert where such a property interest arises. She does not refer to an employment contract or how it relates to light duty if such a contract exists. Furthermore, her allegation that Defendant created a policy regarding light duty status does not create a property interest. Federal courts applying North Carolina law have recognized that personnel rules and regulations are merely internal administrative guidelines and do not grant a property interest subject to due process protections unless enacted as an ordinance. Id. (citing Pittman v. Wilson Cty., 839 F.2d 225, 229 (4th Cir. 1988); Dunn v. Town of Emerald Isle, 722 F.Supp. 1309, 1311 (E.D.N.C. 1989)).

Therefore, the undersigned respectfully recommends that Defendants' Motion to Dismiss this claim be granted.

### G. 42 U.S.C. § 1983 Claim

Defendant argues that Plaintiff failed to state a plausible claim for violation of 42 U.S.C. § 1983. In Monell v. Dept. of Soc. Servs. of City of New York, the Supreme Court held that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. 658, 691 (1978). "A municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." City of Canton v. Harris, 489 U.S. 378, 385 (1989). This theory of liability requires the existence of an identifiable municipal policy or custom that caused the alleged injury. Riddick v. Sch. Bd. of the City of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000); see also Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009). An official policy or custom giving rise to municipal liability may be created either "(1) through an express

policy ...; (2) through the decisions of a person with final policymaking authority; (3) through an omission ... that manifests deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (internal quotation marks omitted).

Plaintiff has failed to allege any official policy, practice, or custom of institutional sex discrimination. She makes conclusory statements about customs, policies, practices and procedures; failure to properly and adequately instruct, monitor, evaluate, investigate, and discipline; unconstitutional orders, approvals and ratifications; and toleration of wrongful conduct without any supporting facts. See Doc. 8, ¶127. Merely alleging that Defendant was operating under color of state law while engaging in discriminatory conduct along with conclusory statements that Defendant created a practice that constituted a custom or policy is not sufficient to impose liability under § 1983.

Applying the Supreme Court's Iqbal standard for determining whether a complaint alleges sufficient facts to survive a motion to dismiss, it is clear that Plaintiff's conclusory assertions fail to offer any factual support for this claim. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss this claim be granted.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the "City of Charlotte's Motion to Dismiss Plaintiff's Amended Complaint with Prejudice," Doc. 10, be **GRANTED** in part and **DENIED** in part**.** That is, the Motion is denied as to the Plaintiff's claims for sex discrimination and negligent misrepresentation and granted as to all other claims.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Robert J. Conrad, Jr.

SO RECOMMENDED.

Signed: January 17, 2023

_____
David S. Cayer
United States Magistrate Judge